BAPTIST CHURCH OF MADISONVILLE v. WEBB, County Judge, et al.

(No. 7035.)

(Court of Civil Appeals of Texas. Galveston. May 6, 1915. Rehearing Denied May 27, 1915.)

NUISANCE ☞3—COUNTY JAIL—"NUISANCE PER SE."

A county jail is not a "nuisance per se," nor does it necessarily become such by using it for the purpose for which it was built, though it may become such in the manner of its use, and the fact that crazy and intoxicated inmates of a former jail on the same site had on occasions so deported themselves as to cause annoyance to churchgoers, and had disturbed public worship in plaintiff's church, situated about 100 feet away, was not proof that such conduct would be permitted in the future; but the county authorities, if not preventing insane inmates from disturbing religious worship, or if maintaining the jail so as to interfere with the comfort and enjoyment of the church, might be enjoined from maintaining a nuisance, though it would not be enough that the jail's proximity would cause mental annoyance, tend-

ing to lessen the value of the church's property.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 4, 5, 9–25; Dec. Dig. ☞3.

For other definitions, see Words and Phrases, First and Second Series, Nuisance Per Se.]

Appeal from District Court, Madison County; S. W. Dean, Judge.

Suit for injunction by the Baptist Church of Madisonville against Joe E. Webb, County Judge, and others. From an order refusing the injunction prayed for, plaintiff appeals. Affirmed.

W. J. Poole, R. J. Randolph, and J. M. Brownlee, all of Madisonville, for appellant.

McMEANS, J. The Baptist Church of Madisonville brought this suit, praying for injunction to restrain J. E. Webb, county judge, and the county commissioners' court, of Madison county, from building a county jail on a lot in the city of Madisonville owned by the county, situated about 100 feet from the Baptist Church. From an order made by Hon. S. W. Dean, district judge, in vacation, refusing the injunction prayed for, the plaintiff has appealed.

While the matter was determined in vacation, it appears that the proceedings partook very much of the nature of a trial upon the merits in term time, in that witnesses were summoned, sworn, and examined, and the facts largely shown by oral testimony; the judge filed findings of fact and conclusions of law; bills of exceptions were reserved, and assignments of error filed; and a statement of the facts proved at the trial, duly agreed to by the parties and approved by the judge, accompanies the transcript on this appeal. As the findings of the judge seem to contain a correct epitome of the evidence, we adopt the same as our fact findings:

"The plaintiff herein, the Baptist Church of Madisonville, is composed of about 230 members, and has its regular officers and pastor, and is in possession of and owns block 17, composed of lots Nos. 1, 2, 3, and 4, of the town of Madisonville, in Madison county, Tex., and J. M. Brownlee, Jr., W. D. Morgan, and P. H. Orrick are trustees. Madison county, Tex., was organized by act of the Legislature in January, 1853, and has been an organized county since said date, and has always had its set of officers and the seat of government at Madisonville, in Madison county, Tex., since the organization of the county.

"The county jail of Madison county, Tex., was erected upon the lot on which it now stands in 1856, or prior thereto. It was first a one-story log jail; afterwards, in 1873, was reconstructed, and the lower story remained constructed of logs, and the second story was a frame construction, and this jail was used by the county until some time between 1883 and 1887, when the brick jail, which is now being torn down for the purpose of erecting a new jail, was erected and has been used by the county as a jail up to the present time. Lately the county, through its commissioners' court, has contracted for the erection of a two-story jail, brick, on the same site upon which the old one has stood that is being torn down for the erection of the new, and material is

partly on the ground now, and is being placed on the ground for the erection of the new jail. This new jail, according to the testimony of the county judge, will be a modern structure, and is to have a septic tank for the protection of the city of Madisonville from contamination by reason of the jail being located near the courthouse square.

"The jail is located upon the block lying immediately southwest of the public square and touching upon the public square. Upon this block are also the following: A hotel next to the square; a blacksmith shop on the southeast corner of this block, and next to the Baptist church; the residence of a negro woman on the southwest corner of this block; and on the northwest corner the bottling works operated by Mr. M. C. Goode. The blacksmith shop lying next to the Baptist Church occupies 55 feet of the south end of the block, and immediately next to it is the county jail, occupying a lot 27½ feet wide; the block being 220 feet square. There is a street immediately south of the blacksmith shop, and immediately south of this street is the block of land on which the Baptist Church is located. The main body of the church is 105 feet from the county jail, and at its nearest point it is 98 feet from the county jail. J. W. Creath in 1856 deeded this block of land to the Baptist Church of Madisonville. This church was not then in existence, but was organized years later, and I find as a fact that the sale was intended for the Baptist Church when so organized, and I find that the Baptist Church of Madisonville is now the owner of this block of land.

"In 1887 the Baptists began placing material on the ground for the erection of their church, and did erect the foundation, but did not finish the building. In 1890 or 1891 they procured other material, had to tear away a portion of the foundation, because it had given away, and did erect their building on this block, and have maintained their church organization, and have worshiped in its building, and in the building later constructed by them, during all the years since they first built thereon. They now hold some five or six services a week, and in 1912 erected a new church, using the old one as a part of the new, but moving same a little nearer the jail than the old church first erected by them, and used by them up to 1912. They also own another building on this block, which is used as the pastor's home and is known as the Baptist parsonage.

"A number of years ago, which I find to be about 20 years ago, a crazy negro was lodged in the jail, and was very boisterous at times, and the congregation in the Baptist Church was disturbed by him, and he was kept in there for some time, probably three or four years. Later a crazy negro woman was kept in jail who at times created a disturbance, and a white man by the name of Manus, who was also insane, was kept in there and created some disturbance, and a negro woman, Irene Cooper, who was crazy, was kept in jail and created some disturbance, and a white woman named Newland was placed in jail some 2 years ago, and was boisterous in her language and lewd in the state of her person, and was kept in there overnight. She was placed in there on Sunday afternoon, and was observed by some people on their way to the Baptist Church. It appears from the testimony that she was intoxicated at the time.

"At times crowds would gather around the jail when persons were being placed therein by the officers, and would block the sidewalk and cause inconvenience to people who were on their way to Sunday school and also to church services at the Baptist Church, and on one occasion the testimony shows that old and filthy bedding was hanging out on the jail yard fence as they went to church and Sunday school.

"I find that the services of the Baptist Church have never been broken up by the disturbance at the jail, but the membership at the church and the people in attendance of its services have been disturbed and inconvenienced by reason thereof. The Christian Church was at one time located just across the street from the jail, and in about 60 feet of the jail. Their services were never broken up, but noises were heard at times during their services coming from the jail.

"There is no testimony showing the size nor the construction of the proposed jail, other than it is to be a modern jail and is to have two stories. South and east of the block on which the Baptist Church and parsonage are situated is one of the most thickly settled residence portions of the town of Madisonville; but at the time the jail was originally located on the lot on which it has since stood there were no residences in this portion of the town."

The law imposed upon Madison county the duty of providing a county jail for the safe-keeping of malefactors; and in attempting to build a county jail the county judge and commissioners' court were doing only that which the law enjoined upon them. It cannot be held, we think, that a county jail is a nuisance per se. A jail is not a structure which in itself is a nuisance, nor does it necessarily become such by using it for the purpose for which it is erected. It might become such in the manner of its use, and, if so, its maintenance in that manner could be and should be enjoined. Burditt v. Swenson, 17 Tex. 489, 67 Am. Dec. 665; Miller v. Burch, 32 Tex. 210, 5 Am. Rep. 242. The fact that inmates of the old jail on occasion deported themselves in such a manner as to cause annoyance to churchgoers and disturbed public worship is not evidence that such unseemly conduct will be permitted in the future, or that annoyance from that source will be suffered; but if such conduct is permitted, and annoyance suffered, it will be then time enough to invoke the aid of the courts to remedy the wrong. We know of no law in this state that expressly authorizes the confinement of insane persons in county jails; but if the authorities of the county shall hereafter from necessity so confine them, it is incumbent upon them to see to it that such persons are so placed as to not disturb religious worship, and, failing in this, they may subject themselves to correction and restraint by the courts as for maintaining a nuisance. And so, too, if the jail is maintained in such a way as to produce noxious and disagreeable odors, or in any other manner so as to prevent or interfere with the comfort, use, and enjoyment of the church by its members and attendants. It is not enough that the proximity of the jail would produce a degree of mental annoyance, or would tend to lessen the value of the church property (Cardwell v. Austin, 168 S. W. 385), or render it less desirable for church purposes (League v. Journeay, 25 Tex. 172).

We find no error in the record, and the judgment of the court below is affirmed.