CARDWELL et al. v. AUSTIN.    (No. 6732.)

(Court of Civil Appeals of Texas. Galveston. June 2, 1914.)

1. WATERS AND WATER COURSES (§ 75*)—POLLUTION — INJUNCTION — JURISDICTION —STATUTORY PROVISIONS.

Acts 33d Leg. c. 47, punishing the pollution of any water course by the discharge of any sewage therein, and providing that on conviction the county court shall issue an injunction enjoining the person or corporation responsible for the pollution from a further continuance thereof, does not deprive the district court of jurisdiction to prevent and suppress nuisances by injunction, and at most the remedy by injunction conferred on county courts is only cumulative of the remedy resting in the district courts.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 66; Dec. Dig. § 75.*]

2. MUNICIPAL CORPORATIONS (§ 736*)—POWERS—NUISANCE.

A city incorporated under the general laws, with authority under its charter to provide a sewer system, must exercise its authority in a proper manner, and it may not create or maintain a nuisance, and in the construction of a septic tank for the purifying of sewage it must exercise care to build one of such character and dimensions as to prevent the escape therefrom of foul odors in such volume as to create a nuisance to any of its citizens.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1552; Dec. Dig. § 736.*]

3. MUNICIPAL CORPORATIONS (§ 742*)—POWERS—NUISANCE.

In a suit against a city and the owner of a franchise to construct and maintain a septic tank in connection with the sewer system in the city, evidence *held* to support a finding that the construction and operation of a proposed septic tank would create a nuisance, but not to support a finding that the construction and operation of a tank of proper dimensions and character would create a nuisance.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1560, 1563; Dec. Dig. § 742.*]

4. MUNICIPAL CORPORATIONS (§ 736*)—POWERS—NUISANCE.

Where a method can be adopted by which sewage of a city may be purified and discharged practically free from odor, or where the odor will not interfere with the comfortable use and enjoyment by an individual of his home, and where the effluent will not so contaminate a stream as to render it unfit for drinking water for stock, the mere fact that the proximity of a septic tank to the residence of an individual will produce a degree of mental annoyance or tend to lessen the value of his property does not justify an injunction to restrain the establishment and operation of the tank, for the individual may be compensated in money for the damages sustained.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1552; Dec. Dig. § 736.*]

Appeal from District Court, Matagorda County; Samuel J. Styles, Judge.

Action by Wm. E. Austin against H. W. Cardwell and another. From a judgment for plaintiff, defendants appeal. Reformed and affirmed.

Gaines & Corbett and W. C. Carpenter, all of Bay City, for appellants. Linn & Austin and J. W. Conger, all of Bay City, for appellee.

McMEANS, J. Appellee, Wm. E. Austin, brought this suit against the city of Bay City and H. W. Cardwell, seeking to enjoin the defendants from constructing and maintaining upon a tract of 1.6 acres of land owned by defendant city a septic concentration tank to be used in connection with a sewer system in said city, owned by defendant Cardwell and constructed by him under a franchise granted by the defendant city. It was alleged in substance that the effluent from the concentration tank would be into Cottonwood creek, a public water course, at a point some 300 to 550 feet from plaintiff's residence, and that the same would pollute the creek, and noxious and unwholesome odors and gases would arise from the tank, and the polluted stream, thereby creating a

nuisance, and plaintiff would be deprived thereby of the comfortable enjoyment of his home. He alleged several other grounds for injunction, but in the view we take of the case they need not be specifically stated. The defendants answered by general demurrer and several special exceptions and by general denial and by certain special pleas which we do not deem necessary to set out, contenting ourselves with the statement that the points hereinafter discussed were sufficiently raised by the pleadings.

On presentation of the petition to the district judge in chambers, a temporary restraining order was granted, and a time and place fixed for a further hearing upon the petition in chambers; but it does not appear that such further hearing was had. The case being afterwards reached in regular order was tried by the court without the intervention of a jury and resulted in a judgment for plaintiff reading, in part, as follows:

"And thereupon the cause came on for hearing on the merits, and after hearing the evidence of the parties and the argument of the counsel thereon, and being fully advised, it is the opinion of the court that the septic tank contracted for or proposed to be constructed, and the location thereof upon the site proposed, would be and create a nuisance, and would pollute the stream called 'Cottonwood creek'; and being further of the opinion that the construction and operation of said tank on the site proposed would materially damage and injure plaintiff's adjacent property and impair its healthfulness and comfort as a home, and that the plaintiff's property cannot and ought not to be thus damaged and injured without adequate compensation being first made. It is therefore considered by the court, and it is so ordered, adjudged, and decreed, that the defendants, H. W. Cardwell and the city of Bay City, and each of them, their servants, agents, employés, and officers, and all persons acting under them, be and they are hereby perpetually enjoined and restrained from constructing, maintaining, and operating any septic tank constituting a concentration tank for sewage material upon the tract of 1.6 acres of land lying along the south side of the townsite of Bay City, Tex., and being out of and a part of the E. Hall League, in said county of Matagorda, Tex., and being the same tract described in defendant H. W. Cardwell's original answer and which lies adjoining plaintiff's property, as described in the original petition herein, and that they, and each of them, be and they are hereby perpetually enjoined and restrained from constructing, maintaining, and operating such tank and its outfall or outlet pipe in said Cottonwood creek at or along said tract, and from the use of said stream as a conduit and channel for the effluent of such tank, and the pollution of such stream thereby at any point at or near plaintiff's property."

From this judgment the defendants have appealed.

Appellants by their first assignment of error complain that:

"The court erred in overruling the exception of these defendants to the jurisdiction of this court to hear and determine this cause."

Under this assignment appellants, by their several propositions, contend:

(1) That "chapter 47, Acts 33d Legislature of Texas, providing for the punishment of those polluting any water course by a fine, and pro-viding that upon conviction of such offense it shall be the duty of the court in which conviction is had to then issue an injunction restraining the continuance of such pollution, plainly indicates the purpose of the Legislature to prohibit the issuance of injunctions in such cases until conviction." (2) That said act "conclusively indicates that no injunction was to be issued against cities and towns, and independent contractors having disposal of the sewage of cities and towns, until a conviction had upon a criminal charge, with the right of trial by jury." (3) That the court had no power to issue an injunction until after the defendants had been convicted on a criminal charge under the statute, and (4) the county court alone had jurisdiction.

[1] Chapter 47, Acts of the 33d Legislature, in so far as it affects the questions here presented, is as follows:

"Section 1. That it shall be unlawful for any person, firm or corporation, private or municipal, to pollute any water course or other public body of water, from which water is taken for the use of farm live stock and for drinking and domestic purposes, in the state of Texas, by the discharge, directly or indirectly, of any sewage or unclean water or unclean or polluting matter or thing therein, or in such proximity thereto as that it will probably reach and pollute the waters of such water course or other public body of water from which water is taken for the use of farm live stock and for drinking and domestic purposes. A violation of this provision shall be punished by a fine of not less than one hundred dollars and not more than one thousand dollars. * * *

"Sec. 2. Upon conviction of any person under section 1 of this act, it shall be the duty of the court, or judge of the court, in which such conviction is had, to issue a writ of injunction, enjoining and restraining the person or persons or corporation responsible for such pollution from a further continuance of such pollution. * * *"

We think it clear that the Legislature in adopting the act did not attempt or intend to interfere with the exercise by the district court of its general equity jurisdiction to prevent and suppress nuisances by means of the writ of injunction. At most the remedy by injunction conferred by the act upon county courts, is only cumulative of the remedy conferred by law upon and resting in the district courts. Certainly it cannot be held that the act deprived the district courts of jurisdiction. The assignment and propositions are without merit and are overruled.

[2, 3] The seventh and eighth assignments complain that the court erred in finding and holding that the septic concentration tank, if constructed upon the proposed location, would create a nuisance and would pollute Cottonwood creek; the contention being that there was no evidence to warrant such findings.

On October 14, 1913, the city of Bay City by an ordinance granted a franchise to H. D. Cardwell, his successors and assigns, to construct, maintain, and operate a sanitary sewer system in the city of Bay City for a term of 50 years, with the privilege of using the streets, alleys, and public grounds for the purpose of laying its pipes, conduits, etc.; the city reserving the right and option to purchase the sewer system from the grante-

at any time after its completion, at a price agreed upon and named in the ordinance. It was provided that the terminal of the system should be a septic tank located at or near the south end of I avenue, at a point near Cottonwood creek or some other available place, and that the city should furnish the site thereof to the grantee. It was further provided that the septic tank should be 18 feet wide, 60 feet long, and 8 feet deep. The city designated for the location of the tank a tract of 1.6 acres of land owned by it. This tract was upon or near the west bank of Cottonwood creek, and the proposed tank was to be located on a spot about 520 feet in a southwesterly direction from plaintiff's house, in which he and his family resided. The discharge pipe from the tank was to be laid to a point in Cottonwood creek about 576 feet almost south from plaintiff's residence.

It was shown by the testimony that the sewer system was intended to accommodate about 1,500 users, and that the amount of sewage flowing into the tank per day would be from 30 to 50 gallons per capita. The defendant Cardwell testified that a tank of the dimensions specified in the ordinance was too small for the purposes to which it would be applied, and that he intended to enlarge it by making it two feet wider and two feet deeper.

There was testimony from which the trial judge could reasonably have concluded that a septic tank of the dimensions of the one proposed would be sufficient to purify the sewage flowing into it; and, had the court so found, his finding would have been approved. But there was also testimony which warranted the court in finding that the proposed tank was too small and that it would not purify the sewage flowing into it, and in consequence foul, disagreeable, and unwholsome odors would be given off therefrom in such volume and of such character as to create a nuisance, and to interfere with the comfortable use and enjoyment by plaintiff of his home and to render his house practically uninhabitable.

The city of Bay City is incorporated under general laws and under its charter has authority to provide a sewer system for the city; but this authority must be exercised in a proper manner. It has no authority to create or maintain a nuisance, and in the construction of a septic tank for the purifying of sewage it must exercise care to build one of such dimensions and character as to prevent gases and foul odors to escape therefrom in such volume as to create a nuisance to any of its citizens. Donovan v. Royal, 26 Tex. Civ. App. 248, 63 S. W. 1054.

We think that under the facts proven the court properly granted the injunction to prevent the construction and operation of the proposed septic tank. But the judgment went further than this, and enjoined the construction and operation of any tank on the 1.6 acres furnished by the city. The testimony is practically undisputed that septic tanks are efficient in purifying sewage when constructed in a proper manner and of proper dimensions. Appellants' witness, Dr. F. J. Slataper, a bacteriologist, testified to this fact, and further that water flowing from a discharge pipe from such a tank was fit for domestic use. In this he was contradicted. He further testified that no disagreeable odors or gases would be given off from such a tank if properly constructed; that the size required to purify a given amount of sewage is a matter of engineering, with which he was not familiar. Plaintiff's witness E. L. Dormant, a sanitary engineer of large experience, after testifying that the tank proposed to be constructed would be too small to purify the sewage that would flow into it, and that foul gases and odors would, in consequence, be given off of such volume as to be a nuisance to persons living as near as plaintiff, testified:

"It is possible to construct a filter on the inside of the tank so as to absolutely eliminate odor, if the tank is large enough. I will say that I would rather put the filter tank on the inside than on the outside, provided the tank is large enough. That is the only way to eliminate the large quantity of flies and odor."

He further testified:

"Taking it all the year around, I think it is very safe to answer that you use 50 gallons per capita (per day) sewage for 2,500 people. * * * If you use a contact bed, that would require 2.10 of an acre, or approximately 8,000 square feet. If you use a filter bed of charcoal and gravel instead of a contact bed, it takes the same area. If you use gravel and sand, it takes a large area. * * * It would not be possible to construct a septic tank without a contact bed or sprinkling filter without creating a nuisance."

[4] It appears from the testimony generally that there is an odor inseparable from septic tanks; but we think the testimony conclusively proves that the odors thrown off from a septic tank of proper dimensions and of correct construction are of such small volume as not to be hurtful or annoying to one living as far away as the plaintiff from the proposed tank. We think therefore that the court, while correctly enjoining the construction and operation of the tank in question, was not warranted in perpetually enjoining the defendants from constructing and operating a septic tank of proper dimensions and construction, upon the 1.6 acres of land. The proper disposal of sewage is a question of vital importance to cities and towns, and where a method can be adopted by which sewage may be purified and discharged practically free from odor, or, applying the facts concretely, where the odor will not interfere with the comfortable use and enjoyment by plaintiff of his home, and where the effluent will not so contaminate the creek as to render it unfit for drinking water for stock, the mere fact that the proximity of the tank to plaintiff's residence would produce a degree of mental annoyance, or would tend to lessen

the value of his property, ought not to prevent the establishment and operation of the tank on the 1.6-acre tract. If the market value is lessened thereby, and there is no annoyance other than mental disturbance due to the fact that the tank is in the vicinity, then plaintiff could be compensated in money for his damages thus sustained. We think that the judgment should be reformed by eliminating that part of the decree prohibiting defendants from constructing a septic tank of proper dimensions and construction upon the 1.6 acres, and that as thus reformed the judgment should be affirmed, and it has been so ordered. We have examined all of the appellants' assignments of error and are of the opinion that none of them points out errors requiring a reversal.

Reformed and affirmed.